**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **CPL. JEREMIAH PILLOW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-3383** |
| | ) | |
| **SIG SAUER, INC.** | ) | |
| **a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

COMES NOW Plaintiff Cpl. Jeremiah Houghston Pillow, and for his Complaint against Defendant Sig Sauer, Inc. states as follows:

**INTRODUCTION**

1. Plaintiff Cpl. Jeremiah Houghston Pillow (hereinafter "Cpl. Pillow") was severely injured on December 9, 2024 when his Sig Sauer P320 XFIVE Legion firearm, model number 320X59LEGIONR2, bearing the serial number 58J484588 (hereinafter "the subject pistol") unintentionally and spontaneously fired without a trigger pull.

2. Cpl. Pillow was severely injured by the spontaneous and unintentional discharge of the weapon which resulted in a gunshot wound to the right lower leg.

3. Cpl. Pillow was transported via medical flight to the hospital for immediate treatment.

4. The SIG P320 XFIVE Legion model pistol has a Safety Defect pertaining to the fire control system whereby the firearm will discharge spontaneously without input or intention of the user.

5. The subject pistol is a Sig Sauer P320 XFIVE Legion, model number 320X59LEGIONR2, bearing the serial number 58J484588 and has the Safety Defect which caused Cpl. Pillow's firearm to spontaneously discharge and injure him.

**PARTIES**

6. The Plaintiff, at all times pertinent to this Complaint Corporal Jeremiah Pillow was and is a resident citizen of Lea County, New Mexico.

7. Defendant Sig Sauer, Inc. (hereinafter "Sig") is a New Hampshire corporation located in Newington, New Hampshire. Defendant Sig is in the business of designing, engineering, manufacturing, testing, inspecting, marketing, importing, distributing, supplying, and/or selling the pistol, which is the subject of Plaintiff's Complaint.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) where Plaintiff and Defendant are citizens of different states and where the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

9. Venue is proper under in this Court pursuant to 28 U.S.C § 1391(b)(2) where the Plaintiff's injuries occurred due the spontaneous and unintentional discharge of the subject defective pistol in the State of New Mexico.

**FACTS**

10. Cpl. Pillow has faithfully served his community through a career in law enforcement, including serving for twelve years as a police officer with the Lea County Sheriff's Office in New

Mexico. He received advanced training and served as a Special Weapons and Tactics ("SWAT") Team Leader, and is a firearms instructor.

11. On or about November 18, 2023, Plaintiff Cpl. Pillow purchased a Sig Sauer P320 X5FIVE Legion, model number 320X59LEGIONR2 in new condition, bearing the serial number 58J484588 (hereinafter "the subject pistol") from Bud's Gunshop in Paris, Kentucky. The subject pistol was shipped from Kentucky to Cpl. Pillow in Lea County, New Mexico.

12. Cpl. Pillow was severely injured on December 9, 2024 when his Sig Sauer P320 XFIVE Legion, model number 320X59LEGIONR2, bearing the serial number 58J484588 unintentionally and spontaneously fired without a trigger pull.

13. Cpl. Pillow arrived home on December 9, 2024. Mysteriously, his dog Rip did not greet him at the door. Hearing movement in the back of the home, he unholstered the subject pistol in accordance with his training and cleared the house. Upon reaching the back of the house, and finding Rip, he turned to exit a room. He crossed the threshold of the room with his left leg in front of him and right leg behind him while holding the subject pistol in his right hand with his index finger pressing firmly against the slide away from the trigger. As he raised the subject pistol towards the holster a shot rang out. Believing he was under attack, he raised the subject pistol back into position and smelled the familiar scent of a discharged round. Cpl. Pillow then realized he had been shot in his right leg by his own firearm which unintentionally and spontaneously discharged.

14. Cpl. Pillow was severely injured by the spontaneous discharge of the subject pistol which resulted in a gunshot wound to his right lower leg.

15. Cpl. Pillow was transported from the scene by ambulance and air lifted to Covenant Medical Center in Lubbock, Texas for emergency medical treatment.

16. Cpl. Pillow was 48 years of age at the time of his catastrophic injuries as a result of the gunshot wound. The permanency of his injuries is a significant non-economic category of damages that he will experience for the rest of his life.

17. Cpl. Pillow was not touching the trigger at the time of the spontaneous discharge.

18. Cpl. Pillow was holding the subject pistol in his right hand with his right index finger pressed firmly against the slide at the time of the spontaneous unintentional discharge.

19. There was no interference or interaction, whether accidental or intentional, with the trigger or the area around the trigger at the time of the spontaneous discharge.

20. Cpl. Pillow had never dropped the subject pistol nor subjected it to abusive or reckless handling.

21. Cpl. Pillow purchased the subject pistol in new condition and did not modify the subject pistol. He maintained the subject pistol in the original condition which it was in at the time of purchase for the duration of his ownership up to and at the time of the unintentional firing event.

22. The SIG P320 XFIVE Legion model pistol has a Safety Defect pertaining to the fire control system whereby the firearm will discharge spontaneously without input or intention of the user.

23. Cpl. Pillow received no warning that the subject pistol which he had purchased was in a defective condition at the time of purchase and was unsafe.

**COUNT I**
**NEGLIGENCE**

24. Plaintiff restates all preceding allegations as if fully restated herein.

25. Defendant owed Plaintiff a duty to exercise due and ordinary care to design, manufacture, test, marketing and sale the subject pistol to protect and ensure Plaintiff's safety.

26. Defendant knew that amount of care required in the design, manufacture, test, marketing and sale of the subject pistol was high in light of the circumstances.

27. Defendant knew the risk of danger and harm caused by any failure to exercise the requisite degree of care was high.

28. Defendant breached its duty to exercise the degree of care required under the circumstances, in the design, manufacture, test, marketing and sale of the subject pistol in one or more of the following ways:

a. Failing to use and apply good, safe, usual, prevailing, and reasonable principles and standards in designing, engineering, manufacturing, marketing, selling, importing, distributing, supplying, testing, and/or inspecting the subject pistol;

b. Failing to take adequate corrective action or preventive action;

c. Failing to maintain proper records and data of incidents, complaints, malfunctions, inspections and testing;

d. Failing to create and provide clear operational and safety instructions, manuals, warnings, and literature;

e. Failing to warn Cpl. Pillow and the public of the Safety Defect;

f. Failing to warn Cpl. Pillow and the public that Defendant did not inspect or test the pistols before the pistols were distributed;

g. Failing to warn of all the above; and

h. Other acts of negligence to be determined through discovery.

29. The Defendant's conduct as described in this Complaint was inconsistent with what a reasonably careful designer, engineer, manufacturer, marketer, seller, importer, distributor,

and/or supplier of firearms would have done under like circumstances, or the Defendant failed to do what a reasonably careful designer, engineer, manufacturer, marketer, seller, importer, distributor and/or supplier would do under like circumstances.

30. The Defendant's negligence was the proximate cause of Cpl. Pillow's severe injuries, pain, medical expenses required for his treatment now and in the future, and any and all other damages allowable by law. The Defendant is liable for all injuries, damages and losses that resulted from such negligence.

31. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

## COUNT II
## BREACH OF EXPRESS WARRANTY

32. A product is defective if it does not conform to representations of fact made by the Defendant, orally or in writing, in connection with the transaction related to the product.

33. Defendant Sig Sauer, Inc. held the subject model pistol out to the public as a safe, defect free, product upon which the user could rely. Each of the representations of fact made by Defendant Sig Sauer, Inc. is a separate and independent express warranty made to the Plaintiff.

34. Defendant Sig Sauer, Inc. has held out to the public on their website that "The P320 meets and exceeds all US safety standards. However, mechanical safeties are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can

result in an unintentional discharge."[1] This statement is a representation of fact and is an express warranty made to the Plaintiff.

35. Defendant Sig Sauer, Inc. has a P320 Pistols Operator's Manual which sets forth specific representations of fact regarding the subject model pistol including warnings, safe handling instructions, and safety features of the subject model pistol. (See Operator's Manual[2]). Each of the representations of fact[3] contained therein is a separate and independent express warranty made to the Plaintiff.

36. The Operator's Manual warns that improper or abusive handling may result in failure of the safety mechanisms. Factors that may cause failure include: dropping the firearm, impact to the firearm, or the firearm being struck by another object. (Operator's Manual, pages 8-10). These statements are separate and independent representations of fact and constitute express warranties made to the Plaintiff.

37. In addition to the Operator's Manual, Sig Sauer, Inc. provides a resource on their website regarding P320 XFIVE Legion pistol called the P320 Safety & Technical Standards.[4]

38. The P320 Safety & Technical Standards provides specific representations of fact and states explicitly: "The SIG SAUER P320 features a mechanical safety system designed to exceed the industry's most rigorous standards. Through the Modular Handgun System (MHS) selection process, the P320 platform (M17/M18) was subjected to and passed the U.S. Military's strict drop testing and safety protocols." This statement is a representation of fact and is an express warranty made to the Plaintiff.

[1] https://www.sigsauer.com/p320-voluntary-upgrade-program#faqs
[2] The Operator's Manual is available online at: https://www.sigsauer.com/owners-manuals.
[3] https://www.sigsauer.com/p320-xfive-legion.html,
[4] https://www.sigsauer.com/p320-safety-technical-standards

39. In making the above and other similar statements to the public, Defendant has held out to the public that the P320 product line is safe and defect free and that the risk of injury lies with the care of the individual handling the firearm.

40. Cpl. Pillow handled his firearm properly and the firearm did not experience any of the abusive handling factors that Defendant has warned may cause failure of the firearm. Despite this, his firearm failed and the resulting spontaneous discharge caused him to be seriously injured.

41. Defendant Sig Sauer, Inc. has a Voluntary Upgrade Program which allows consumers to send back their firearm to receive upgrades and testing.[5]

42. The Voluntary Upgrade Program has a serial number look-up which allows consumers to determine if their P320 is eligible for the Voluntary Upgrade Program. Upon entering the subject pistol's serial number, 58J484588, into the search, the message returns that the subject pistol is not a candidate for the Voluntary Upgrade Program.

43. Cpl. Pillow, relied on representations of fact made by the Defendant, orally or in writing, in connection with his purchase of the subject pistol.

44. Cpl. Pillow relied on Defendant's specific representations of fact as set forth above regarding the safety of the subject model pistol.

45. The Defendant breached these express warranties by not providing a product to Cpl. Pillow that conformed to these representations of fact.

46. As a proximate cause of the Defendant's breach of express warranties, Plaintiff Pillow was severely injured.

47. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

---

[5] https://www.sigsauer.com/p320-voluntary-upgrade-program

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

48. A product is defective if it is not reasonably fit for its intended use or the uses reasonably foreseeable by the Defendant.

49. Cpl. Pillow's pistol was not reasonably fit for either the uses intended or the uses reasonably foreseeable by the Defendant due to the Safety Defect.

50. The Defendant was on notice of the breach of implied warranties at the time the subject pistol was manufactured, marketed, sold, imported, distributed, and/or supplied by them. The Defendant knew, or should have known, about the Safety Defect at the time subject pistol was designed, engineered, manufactured, marketed, sold, imported, distributed, and/or supplied by them.

51. As a proximate result of the Defendant's breach of implied warranties of merchantability, Cpl. Pillow was severely injured.

52. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

## COUNT IV
## STRICT LIABILITY – MANUFACTURING DEFECT

53. Any marketer, seller, importer, distributor, and/or supplier in the chain of distribution is liable for injury caused by a defective product.

54. The Defendant was the manufacturer in the chain of distribution of the subject pistol and is, therefore, liable for the injuries caused to Cpl. Pillow by the defective pistol.

55. A product is defective because of a manufacturing defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

56. A product is unreasonably dangerous because of a manufacturing defect if it is different from its intended design and fails to perform as safely as the intended design would have performed.

57. A product is defective if unreasonably dangerous even if the Defendant has exercised all possible care in the preparation and sale of the product.

58. The subject pistol is defective because of the manufacturing defect (i.e., the Safety Defect) as it was different from its intended design and failed to perform as safely as the intended design would have performed. The subject pistol was expected to and did reach Cpl. Pillow without substantial change affecting that condition.

59. The manufacturing defect (i.e., Safety Defect) was the proximate cause of Cpl. Pillow's injuries.

60. The Defendant is strictly liable for all injuries, damages, and losses that resulted from the manufacturing defect of the subject pistol.

61. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

**COUNT V**
**STRICT LIABILITY – DESIGN DEFECT**

62. Any marketer, seller, importer, distributor, and/or supplier in the chain of distribution is liable for injury caused by a defective product. The Defendant was the designer in the chain of distribution of the subject pistol and is, therefore, liable for the injuries caused to Cpl. Pillow by the defective pistol.

63. A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

64. A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the defendants, or alternatively, the risk of danger in the design outweighs the benefits.

65. A product is defective if unreasonably dangerous even if the Defendant has exercised all possible care in the preparation and sale of the product.

66. Cpl. Pillow's pistol is defective because of the design defect (i.e., the Safety Defect) and was in a condition unreasonably dangerous to the Plaintiff. The subject pistol was expected to and did reach him without substantial change affecting that condition.

67. The design defect (i.e., the Safety Defect) was the proximate cause of Cpl. Pillow's injuries.

68. The Defendant is, therefore, strictly liable for all injuries, damages, and losses that resulted from the design defect of the subject pistol.

69. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

## COUNT VI
## STRICT LIABILITY FAILURE TO WARN

70. A product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

71. A product is defective if unreasonably dangerous even if the Defendant has exercised all possible care in the preparation and sale of the product.

72. The foreseeable risks of harm from the Safety Defect could have been reduced or avoided if the Defendant had provided reasonable instructions or warnings, and the Defendant's failure to provide these instructions or warnings renders the subject pistol defective.

73. The Defendant had the opportunity to warn Cpl. Pillow about the Safety Defect upon his original purchase yet failed to do so.

74. Failure to warn was the proximate cause of Plaintiff Pillow's injuries.

75. The Defendant is strictly liable for all injuries, damages, and losses that resulted from their failure to warn Cpl. Pillow about the Safety Defect.

76. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**

77. The Defendant, in the Manual for the SIG P320 Pistols product line, made representations of fact to Plaintiff Pillow. These include the following:

a. "the internal safeties on the P320 are designed to prevent it from firing without the trigger being fully pulled. When the trigger is pulled or depressed, even unintentionally – whether by a finger or foreign object – the P320 firearm will fire as designed. When engaged, a manual safety locks the trigger and prevents it from being accidentally or intentionally pulled, providing additional protection from unintentional discharge. However, an engaged manual safety will also prevent an operator from firing their pistol even when they need it to fire if the manual safety is not first disengaged." (Operator's Manual, page 6).

b. "You are responsible to protect against inadvertent trigger movement while carrying any firearm. Even if your firearm is equipped with a manual safety, you must ensure that the trigger is not contacted in any circumstance – whether by finger or an object – other than when you intend to discharge the firearm." (Operator's Manual, page 7).

c. "This pistol contains the following safety features: The P320 is offered when an option ambidextrous manual safety, which prevents the trigger from being pulled when engaged." (Operator's Manual, page 26).

d. "The manual safety mechanically blocks the movement of the trigger bar, preventing release of the striker." (Operator's Manual, page 28).

78. The Sig Sauer website advertises the P320 XFIVE Legion product line as covered by the Sig Sauer Infinite Guarantee.[6]

79. The Sig Sauer Infinite Guarantee is available on their website: https://www.sigsauer.com/infinite-guarantee. The website states: "Our promise: We guarantee that your new SIG SAUER firearm, optic, or suppressor was originally manufactured free of defects in material, workmanship, electrical, optical, and mechanical function. In the event it becomes damaged from defect in any way we will repair your SIG SAUER product, at no charge to you. If we cannot repair your product, we will replace it or, if we cannot replace it, we will provide you with a replacement of equal value."

80. These statements by the Defendant concerned material facts that they believed to be true but which were, in fact, false. The Defendant was negligent in making the statements because they should have known the statements were false, and in making the statements, they intended or expected that another would rely on the statements.

81. Cpl. Pillow justifiably relied on the false statements by purchasing, retaining, carrying, and using the subject pistol. Thus, these statements were the proximate caused Cpl. Pillow's injuries.

82. The Defendant's negligent misrepresentations were the proximate cause of Cpl. Pillow's injuries.

83. The Defendant is liable for all injuries, damages, and losses that resulted from negligent misrepresentations.

---

[6] https://www.sigsauer.com/p320-xfive-legion.html

84. Should the Defendant's conduct be found to be malicious, willful, reckless, fraudulent, and in bad faith such that compensatory damages are inadequate to satisfy the wrong, punitive damages should be awarded.

WHEREFORE, Plaintiff demands judgment against the Defendant for any and all damages available under the law including compensatory and punitive damages, plus costs, and demands trial by jury of all issues so triable.

## DEMAND FOR JURY TRIAL

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

Respectfully Submitted,

**MARTINEZ, HART,**
**SANCHEZ & ROMERO, P.C.**

*/s/ F. Michael Hart*
F. Michael Hart
Julio C. Romero
Kelly Stout Sanchez
Frederick Michael Hart
1801 Rio Grande Blvd. NW
Albuquerque, NM 87104
(505) 343-1776
(505) 344-7709 facsimile
mikeh@osolawfirm.com
julior@osolawfirm.com
kellys@osolawfirm.com
fmh@osolawfirm.com

*~and~*

M. Todd Wheeles (PHV to be filed)
Mathew G. Garmon (PHV to be filed)
**Wheeles & Garmon, LLP**
5000 Southlake Park, Suite 150
Birmingham, Alabama 35244
Telephone: (205) 593-4934
todd@wheelesgarmon.com
matt@wheelesgarmon.com

***Attorneys for Plaintiff***